HARSCO CORPORATION, Appellee,

v.

CRANE CARRIER COMPANY, Appellant.

[Cite as *Harsco Corp. v. Crane Carrier Co.* (1997), 122 Ohio App.3d 406.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–97–8.

Decided Aug. 22, 1997.

408

*Charles J. Kurtz III* and *Constance M. Greanery,* for appellee.

*Melvin D. Weinstein,* for appellant.

HADLEY, Judge.

Defendant-appellant Crane Carrier Company ("Crane") appeals the judgment of the Union County Common Pleas Court denying Crane's motion for stay of

proceedings and referral to arbitration. For the reasons that follow, we reverse the decision of the trial court and refer this matter to arbitration as provided for in the Manufacturing License Agreement entered into between Crane and plaintiff-appellee Harsco Corporation ("Harsco").

Crane and Harsco entered into a Manufacturing License Agreement on May 11, 1993. Pursuant to the terms of the agreement, Crane manufactured and sold fifty school bus chassis to Harsco. Harsco also obtained Crane's license to manufacture additional bus chassis. As part of the agreement, Crane also covenanted to indemnify Harsco for any liability "arising out of manufacturing defects in the [c]hassis made by Crane * * * and for actual defects in the design of the original Crane [c]hassis * * *." If a conflict arose between the parties as to whether a design or manufacturing defect existed, an arbitration clause in the Manufacturing License Agreement provided that three automotive engineers[1] would conclusively determine the issue.

In June 1996, the National Highway Traffic Administration ("NHTA") tested the fuel tank barrier on the bus chassis manufactured by Harsco and designed by Crane. The NHTA concluded that the fuel barrier was defective, and the chassis did not pass inspection. The fuel barrier was tested two additional times, and both times the barrier failed inspection. Harsco claims that Crane's conduct during these inspections acted as a waiver of the arbitration clause of the Manufacturing License Agreement. Crane disputes this allegation. Therefore, Harsco claims that the arbitration clause of the Manufacturing License Agreement is no longer in force.

On November 12, 1996, Harsco filed suit against Crane in the Union County Common Pleas Court. Included in Harsco's complaint were allegations that the bus chassis which failed inspection were defectively designed. Crane filed its answer on January 16, 1997, and asserted the affirmative defense that the Manufacturing License Agreement between the parties included an arbitration clause to resolve issues of design and manufacturing defects.

For three months following the filing of its answer, Crane responded to requests for admissions, issued its own discovery requests, and defended and took depositions. On April 24, 1997, Crane moved the trial court for an order referring the issues of manufacturing defects and design defects to arbitration, and for an order staying the court proceedings until arbitration had concluded. The trial court overruled Crane's motion the next day, stating in whole that "[t]he Motion of Defendant for Stay of Proceedings and Referral to Arbitration, filed April 24, 1997 is OVERRULED. This case was filed November 12, 1996, and is

---

1. Crane and Harsco each select one automotive engineer, and both engineers then select a third engineer.

scheduled for Jury Trial July 21, 1997, the Court having no indication that arbitration was even an option until now."

This appeal followed. With the journal entry of June 6, 1997 from this court, we stayed the proceedings before the trial court pending the outcome of this appeal. With the issuance of this opinion, we remove the stay of proceedings pending appeal. In its sole assignment of error, Crane alleges:

"The trial court erred by overruling appellant's motion for stay of proceedings and referral to arbitration where appellant had properly asserted its right to arbitration as an affirmative defense in its answer and filed a motion for stay of proceedings."

■ Before addressing the merits of this appeal we must state that the proper standard of review for this case is the "abuse of discretion" standard.[2] See *Bedford City School Dist. v. Trane Co.* (Mar. 20, 1997), Cuyahoga App. No. 71024, unreported, 1997 WL 127194; *Phillips v. Lee Homes, Inc.* (Feb. 17, 1994), Cuyahoga App. No. 64353, unreported, 1994 WL 50696. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

Crane places three issues before this court in its sole assignment of error. First, Crane contends that "Ohio law mandates that the arbitration provision in the agreement be enforced[,] and that all proceedings in the trial court be stayed until such arbitration has been had." Next, Crane alleges that it "properly preserved its right to arbitration by asserting such right as an affirmative defense in its answer and by filing a motion for stay and referral to arbitration." Finally, Crane states that it "did not waive its right to arbitration by its actions prior to the filing of the lawsuit." We will address each issue as presented by Crane in an inverted order.

■ As stated earlier, Crane and Harsco entered into an agreement that provided that Crane would be responsible for any liability "arising out of

---

**2.** "The process of review for abuse of discretion has been summarized as follows, in Brennan, *Standards of Appellate Review*, 33 Def. L.J. 377 (1984):

"1. Did the lower court have discretion to act as it did?

"a. If not, an error of law was made, and the appellate court may freely review the action taken.

"b. If so, then the appellate court may not review the action unless there was an abuse of discretion." Whiteside, Ohio Appellate Practice (1991), Standards of Review, 152, fn. 18.

Applying the principle as set forth above, clearly the trial court judge in the present case had the discretion to determine whether to sustain or overrule Crane's motion for stay of proceedings and referral to arbitration. Therefore, we must review the action under the abuse of discretion standard.

manufacturing defects in the [c]hassis made by Crane * * * and for actual defects in the design of the original Crane [c]hassis * * * " as determined by three automotive engineers. The parties do not dispute that this arbitration clause was in full force and effect until the NHTA tested the design of the fuel tank barrier on the bus chassis for the first time. Crane contends that this arbitration clause is still in full force and effect. We agree.

The sale of the fifty bus chassis to Harsco by Crane utilized a fuel barrier design designated as Revision C. The Manufacturing License Agreement between the parties provided that Harsco would obtain the license to the design to produce Crane bus chassis in the future. This design, however, utilized a slightly modified fuel barrier design, referred to as Revision D. Harsco began manufacturing bus chassis utilizing Revision D fuel barriers. Revision D was the design tested for approval by the NHTA, and the design which failed the test.[3] The reason the fuel barrier failed the crash-test inspection was because the welds holding the fuel barrier frame together broke.[4] Subsequently, a second test was conducted on a bus chassis utilizing the Revision D fuel barrier. The welds on the fuel barrier broke again, and the chassis failed the test.

In an attempt to rectify the problem with the fuel barrier, Crane and Harsco collectively tested a Revision D barrier a third time. Harsco claims that the conduct of the parties in preparation for this third test of the fuel barrier constituted a waiver of the arbitration clause in the Manufacturing License Agreement.

Crane took the responsibility of preparing the barrier to be placed on the bus chassis. Additionally, Crane had a second barrier built specifically to be analyzed for defects in the welding material or workmanship, but not to be crash-tested. Crane, however, failed to have this barrier analyzed before the third crash test occurred. When the third crash test took place, the barrier failed to pass inspection. Crane contends that its later analysis revealed that the breaks in the welds were due to the size of the welding rod utilized. Crane states that when a smaller welding rod is used, the weld is deeper and more secure. Therefore, Crane argues that its design was not defective, and that Harsco was improperly constructing the barrier by utilizing too large of a welding rod. Harsco still maintains that the design of the fuel barrier was defective or otherwise in breach of the Manufacturing License Agreement.

---

3. The fuel tank barrier referred to as Revision C was not involved in any of the tests for the NHTA referred to in this appeal.

4. Crane contends that welding breaks are the result of inferior workmanship and welding material. Harsco, on the other hand, contends that the breaks are not necessarily from inferior workmanship, and could be the result of another type of defect.

Correspondence between representatives for Crane and Harsco made before the third crash tests and attached to the parties' complaint and answer provide this court with the only insight to whether a waiver occurred with respect to the arbitration clause in the Manufacturing License Agreement. The correspondence reveals that Crane was trying to avoid implementing the arbitration clause or submitting the dispute to the judicial process. However, no agreement, either express or implied, was reached between the parties that acted as a waiver to the right to arbitration.

"It is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts. * * *" *Campbell v. Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 329, 55 O.O. 195, 198, 123 N.E.2d 401, 405, certiorari denied (1955), 349 U.S. 929, 75 S.Ct. 771, 99 L.Ed. 1260. "Arbitration is favored because its purpose is 'to avoid needless and expensive litigation.'" *Fairfield Eng. Co. v. Anchor Hocking Corp.* (Apr. 10, 1986), Marion App. No. 9–84–37, unreported, 1986 WL 4367, quoting *Springfield v. Walker* (1885), 42 Ohio St. 543, 546, 1885 WL 49.

After having examined the correspondence between the parties, the conclusion we reach is that both parties disagree about the quality of the fuel tank barrier and which party bears responsibility for its failure. The parties tried to resolve their disagreement short of having to submit the dispute to arbitration or the judicial process. Crane had no greater responsibility to submit this dispute to arbitration than did Harsco, and Crane's failure to do so cannot act as a waiver to arbitrate the issues between the parties. Crane's proposed resolutions to their dispute were never clearly accepted by Harsco. Without more, Crane's pre-litigation conduct cannot be found to constitute a waiver of its rights and duties under the arbitration clause of the Manufacturing License Agreement. The same cannot be said for Harsco.

"The general rule is said to be ' * * * that either party to a contract of arbitration may waive it. * * *' [*La Nacional Platanera v. N. Am. Fruit & Steamship Corp.* (C.A.5, 1936), 84 F.2d 881, 882.] And a plaintiff's waiver may be effected by filing suit. When the opposite party, the potential defendant, is confronted with a filed lawsuit, the right to arbitrate can be saved by seeking enforcement of the arbitration clause. This is done under R.C. 2711.02 by application to stay the legal proceedings pending the arbitration. Failure to move for a stay, coupled with responsive pleadings, will constitute a defendant's waiver." *Mills v. Jaguar–Cleveland Motors, Inc.* (1980), 69 Ohio App.2d 111, 113, 23 O.O.3d 142, 143–144, 430 N.E.2d 965, 967.

Harsco waived its right to arbitrate the disagreement with Crane by filing its complaint in the Union County Common Pleas Court. Having previously found that Crane's prelitigation conduct did not constitute a waiver of the arbitration clause, its formal opportunity to either waive or invoke its right to arbitration arose after Harsco filed its complaint. To invoke its right to arbitration, Crane needed to file an application with the trial court to stay the legal proceedings pending the outcome of arbitration. Crane filed a motion to stay the legal proceedings pending the arbitration, as well as a request to the court to refer the issues of design and manufacturing defects to arbitration. Crane's requests to the trial court, however, were three months after it filed an answer in the litigation, and after it answered and issued discovery, including depositions.

We, therefore, must address Crane's second issue raised above; whether Crane timely and "properly preserved its right to arbitration by asserting such right as an affirmative defense in its answer and by filing a motion for stay and referral to arbitration."

R.C. 2711.02 states:

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration. * * * "

The General Assembly did not specify at what point in the litigation a party filing an application for stay needed to submit the application to preserve its right to arbitrate. Consequently, the judiciary is left to speculate, based on the totality of the circumstances, as to when an application for stay is timely filed. An untimely application, whenever that time may be, has been interpreted as a waiver of the right to arbitrate.

The Cuyahoga County Court of Appeals has set forth a test where two elements must be shown to demonstrate that the defending party's conduct during litigation constitutes a waiver to its right to arbitrate. *Phillips v. Lee Homes, Inc., supra.* To prove that the defending party waived its right to arbitration, the complainant is required to demonstrate that the defending party "knew of an existing right to arbitration, see *List & Son Co. v. Chase* (1909), 80 Ohio St. 42, 88 N.E. 120, and acted inconsistently with that right to arbitrate." *Id.;* See *Cent. Trust Co. v. Anemostat Prods. Div.* (S.D.Ohio 1985), 621 F.Supp. 44; *Rock v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1992), 79 Ohio App.3d 126, 606 N.E.2d 1054. "The essential question is whether, based on the totality of

the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." *Phillips v. Lee Homes, Inc., supra.*

The defending party in *Phillips, supra,* asserted in its answer the affirmative defense that an arbitration clause existed between the parties to resolve a portion of the dispute between the parties. In an amended answer the defending party proceeded to assert various counterclaims against the complainant. Additionally, extensive prelitigation discovery took place, depositions had been taken, and the defending party requested leave from the court to file a third-party complaint. The defending party also objected to an extension of time filed by the complainant to file an expert report by stating that "they [the defending party] '[wanted] to proceed forward with this litigation so that they are in a position to defend [against] the allegations of this claim.'" Nearly three years after the inception of the lawsuit the defending party filed its motion to stay the judicial proceedings pending arbitration. The trial court denied the motion without opinion, and the court of appeals upheld the decision on the basis that the defending party had waived the right to arbitrate the issue by acting inconsistently with this right.

■ We will apply the standard as set forth in *Phillips* to the present case. We will, based on the totality of the circumstances, determine (1) whether Harsco demonstrated that Crane knew of an existing right to arbitration, and (2) whether Crane acted inconsistently with that right to arbitrate.

■ Harsco can easily demonstrate that Crane knew of its contractual right to compel arbitration by revealing that Crane raised the arbitration agreement as an affirmative defense in its answer. The trial court abused its discretion when it stated in its journal entry that it was not aware that arbitration was an option to resolve the present dispute. Clearly, Crane affirmatively pled the defense in its answer. The facts are in clear contradiction to the trial court's journal entry.

With regard to the second factor, we must depend on the totality of the facts of this case.

■ "Circumstances which may be considered by the court as pertinent to the issue are: (1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts." *Phillips, supra; Rock v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., supra;*

see *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.

We must remember that a waiver of the right to arbitrate is not lightly inferred. *Campbell v. Automatic Die & Products Co.*, 162 Ohio St. at 329, 55 O.O. at 198, 123 N.E.2d at 405; *Springfield v. Walker*, 42 Ohio St. at 546; *Fairfield Eng. Co. v. Anchor Hocking Corp., supra.* We find that the trial court abused its discretion, and Crane did not waive its right to compel arbitration to resolve the dispute between the parties.

The record before us demonstrates that Crane filed its motion for stay of proceedings and referral to arbitration within three months after filing its answer. As stated above, the General Assembly, when enacting R.C. 2711.02, did not specify at what point in the litigation process a party must file an application for stay to preserve the right to arbitrate. We recognize that courts of appeals throughout the state have differing opinions regarding the timeliness of a motion for stay of proceedings and referral to arbitration.[5] The better rule of law

---

5. In *Mills v. Jaguar–Cleveland Motors, Inc.*, 69 Ohio App.2d 111, 23 O.O.3d 142, 430 N.E.2d 965, paragraph one of the syllabus, the Cuyahoga County Court of Appeals stated that "[w]hen the * * * contracting party files an answer and does not demand arbitration, it, in effect, agrees to the waiver and a referral to arbitration under R.C. 2711.02 is inappropriate." In *Mills, supra,* the defendant did not demand arbitration nor did it affirmatively plead arbitration as a defense in its answer. The Butler County Court of Appeals reached a similar decision in *Jones v. Honchell* (1984), 14 Ohio App.3d 120, 14 OBR 135, 470 N.E.2d 219. The court noted that had the defending party "elected to force the dispute into arbitration, he need only have asserted the arbitration clause in his answer and made a motion to stay the trial per R.C. 2711.02." *Id.* at 122, 14 OBR at 137, 470 N.E.2d at 221. These cases, however, are distinguishable from the present case. In both *Mills* and *Jones,* neither defending party affirmatively pled as a defense in their answers that an arbitration agreement existed between the parties precluding the pending judicial proceeding.

More similar to the present case are two decisions from courts of appeals finding that the defending parties did not waive their right to arbitrate by not filing the motions for stay of proceedings and referral to arbitration contemporaneously with their answers. In these cases, both defending parties, like Crane in the present case, affirmatively pled the existence of an arbitration clause in their answers. The defending parties did not, like Crane, file a motion for stay and referral to arbitration contemporaneously with their answers. Yet the courts found that the defending party did not waive the right to assert arbitration. In *Savage v. All Family Homes, Inc.* (Dec. 11, 1992), Geauga App. No. 92–G–1688, unreported, 1992 WL 366898, the Geauga County Court of Appeals found that the defendant, by asserting the affirmative defenses of lack of jurisdiction and that the arbitration clause of the contract applied, sufficiently preserved its right to arbitration. The defending party never filed an application requesting that the trial court stay the proceedings, but did file, five months after its answer, a motion for summary judgment requesting the trial court to refer the issue to arbitration. Likewise, in *Kessel v. Foot Health Centre, Inc.* (Jan. 31, 1989), Mahoning App. No. 88 C.A. 68, unreported, 1989 WL 10295, the Mahoning County Court of Appeals found that the defending party adequately preserved its right to have the dispute resolved in arbitration. In *Kessel,* the defending party pled in its answer that arbitration was the method of resolution agreed upon by the parties. An application for stay and referral to arbitration was not filed with the court until eight months after the defending party filed its answer. The appellate

appears to be that a motion for stay of proceedings pending arbitration and a referral to arbitration may be filed after the defending party answers the complaint if (1) the application of the arbitration clause is affirmatively pled in the answer, and (2) the defending parties' conduct, based on the totality of the circumstances under *Phillips*, does not demonstrate a waiver of the clause.

In the present case, Crane filed its motion for stay and referral to arbitration three months after filing its answer. During this time very limited discovery took place and a limited number of depositions were conducted. This conduct is not, without more, sufficient to demonstrate a waiver of the right to seek arbitration. If the parties were in arbitration, a process similar to discovery and the taking of depositions would very likely have been conducted to assist the arbitrators in determining the dispute before them. Additionally, Crane did not file a third-party complaint, counterclaim, or summary judgment motion. Instituting any one of these proceedings before the court would demonstrate Crane's recognition of the trial court's authority to determine the suit pending before it. Finally, Harsco is not prejudiced by Crane's brief delay in filing its motion for stay and referral to arbitration. Both parties to the Manufacturing License Agreement agreed to submit disputes of this nature to arbitration, and, as stated above, the progress made in the present case, before the motion for stay was filed, is largely duplicative of what would occur if this matter was pending in arbitration.

Therefore, we find that the trial court abused its discretion in that its decision was unreasonable. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601. A statement by the court that it was unaware of the option to arbitrate the issue when it overruled Crane's motion for stay and referral to arbitration is not sound reasoning. This is true because Crane affirmatively pled the existence of an applicable arbitration clause in its answer, putting both Harsco and the trial court on notice of the arbitration clause. Based on the foregoing, we find that Crane properly preserved its right to arbitration, based on the totality of the circumstances, by asserting the right to arbitrate in its answer, by filing a motion for stay and referral to arbitration three months later, and by not conducting itself in a manner acknowledging that the trial court had jurisdiction over the dispute.

We order that the referable issues of alleged design and manufacturing defects of the fuel tank barrier be sent to arbitration as provided by the Manufacturing

---

court found that this application, eight months after the answer, gave the defending party "the right to binding arbitration."

License Agreement entered into by the parties to resolve this dispute. The complaint filed by Harsco against Crane in the present case also contains nonarbitratable issues. The nonarbitratable issues contained in the complaint pending before the Union County Common Pleas Court are stayed until arbitration is concluded. See *Kline v. Oak Ridge Bldrs., Inc.* (1995), 102 Ohio App.3d 63, 66, 656 N.E.2d 992, 994–995.

*Judgment reversed.*

EVANS, P.J., concurs.

THOMAS F. BRYANT, J., concurs separately.

THOMAS F. BRYANT, Judge, concurring separately.

I concur in the result reached and the judgment we enter, but I do not agree with the legal analysis pronounced by the majority based on the "abuse of discretion" standard of our review. I do not agree that R.C. 2711.02 affords any discretion to the trial court in ordering stay of proceedings pending arbitration in the circumstances covered by that statute.

Here, the trial court either was mistaken about or ignored the effort of the defendant to protect its right to answer by asserting that right as an affirmative defense by answer.

While conceivably some fact finding may be necessary to discover the default of a party or lack of such in proceeding with arbitration, once it is determined that no default has occurred, the law is clear that the judge "shall" enter the order of stay.

No trial judge has discretion to enter an order clearly contrary to an express statute.

However, the facts recited in the majority opinion satisfy determination of no default by the party seeking arbitration; hence, review for error of law equally requires reversal. Therefore, I concur only in the judgment entered.