DECISION.
Defendants-appellants PaineWebber, Inc., and Richard Wilhelm appeal the trial court's order denying their motion to stay proceedings and their motion to compel arbitration pursuant to the agreement signed by plaintiff-appellee Alfred Cohen's deceased, Samuel Ginsburg, and PaineWebber. Upon our conclusion that the arbitration agreement did not cover claims that essentially alleged theft, we affirm the judgment of the trial court.
The record transmitted to this court demonstrates the following facts. PaineWebber is an investment firm based in Delaware with an office in downtown Cincinnati. Richard Wilhelm, at all times relevant to this dispute, was the manager of PaineWebber's Cincinnati office. Wilhelm's duties included supervising and monitoring all employees and accounts in the Cincinnati office. PaineWebber employed Richard Zenni as a registered securities broker for its Cincinnati office from 1992 to 1999. Zenni, through bankruptcy-court filings, has allegedly admitted to stealing millions of dollars from PaineWebber's elderly investors, which included Samuel Ginsburg.
Ginsburg opened a PaineWebber account with Zenni in August 1992, and, at that time, Ginsburg executed an account application and a client's agreement that included an arbitration clause. The arbitration agreement provided, in part, as follows:
 I agree, and by carrying an account for me PaineWebber agrees, that any and all controversies which may arise between me and PaineWebber concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act * * *.
 There is no dispute that Ginsburg signed the agreement containing this arbitration provision, and that Ginsburg's heirs and executors are also bound by the agreement.
Ginsburg died on October 9, 1999. Shortly after his death, it was discovered that over one million dollars had been stolen from his PaineWebber account. On July 26, 2000, Alfred Cohen, in his capacity as the executor of Ginsburg's estate, filed a complaint in the Hamilton County Court of Common Pleas against PaineWebber and Wilhelm, alleging unlawful conversion and fraudulent concealment. Specifically, Cohen alleged that PaineWebber and Wilhelm had aided and abetted Zenni in stealing money from Ginsburg. On July 28, 2000, PaineWebber filed a petition in the United States District Court for the Southern District of Ohio, seeking to compel arbitration and to stay the civil action. Cohen contested the federal district court's jurisdiction to stay the civil proceedings and compel arbitration, arguing that Wilhelm was a necessary and indispensable party to the lawsuit, and that once Wilhelm was joined as a party, the district court's diversity jurisdiction would be defeated. The district court agreed and dismissed PaineWebber's petition. That decision is currently on appeal to the United States Court of Appeals for the Sixth Circuit.
In response to the complaint filed by Cohen in the Hamilton County Court of Common Pleas, PaineWebber and Wilhelm moved for a stay of the action and an order compelling arbitration pursuant to the agreement signed by Ginsburg and PaineWebber. The trial court denied this motion, and this timely appeal followed.[1]
In their sole assignment of error, PaineWebber and Wilhelm assert that the trial court erred in denying their motion for a stay of the proceedings pending arbitration. We are unpersuaded.
An appellate court reviews the denial of a stay of proceedings pending arbitration under an abuse-of-discretion standard.[2] An abuse of discretion contemplates more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable.[3] The Ohio Supreme Court has adopted four rules, common to both state and federal courts, for reviewing a decision concerning a dispute's "arbitrability": (1) that "`arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit"; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that, when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that, when a "contract contains an arbitration provision, there is a presumption of arbitrability in the sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[4]
Here, the parties' dispute centers on whether the claims alleging fraudulent concealment and unlawful conversion are arbitrable. We note that the trial court denied the stay pending arbitration without opinion. But because there is no dispute as to whether a valid arbitration provision existed within the contract, we may presume that the trial court based its decision on the premise that the fraudulent-concealment and unlawful-conversion claims were not subject to the arbitration provision contained in the contract. As the arbitrability of a claim is a question of law for the trial court, we review the issue of the arbitrability of the specific claims de novo.[5]
It has been held that the resolution of the question "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than on the legal causes of action asserted."[6] Here, the facts underpinning the unlawful-conversion claim are the same facts offered to support the claim of fraudulent concealment. In the complaint, Cohen alleged that Wilhelm and PaineWebber had had direct notice of, and thus knowledge of, Zenni's conduct because of the obvious pattern of risky and questionable trades made by Zenni on behalf of Ginsburg, and because of the numerous accounts opened in Ginsburg's name when only one account would have sufficed. Cohen also alleged that PaineWebber and Wilhelm had encouraged Zenni to befriend elderly investors, and that Wilhelm and PaineWebber had chosen to disregard their knowledge of Zenni's conduct and had failed to notify their elderly investors, including Ginsburg, of the theft. These facts essentially alleged a form of theft, i.e., that PaineWebber and Wilhelm had "aided and abetted" Zenni in stealing Ginsburg's money.
Although the arbitration provision is broad, stating that it covers "any and all controversies" pertaining to the brokerage account, we cannot say, as a matter of law, that a claim alleging such tortious conduct as the "aiding and abetting" of a theft is subject to the arbitration provision here. An arbitration clause itself is a contract. A contract requires a "meeting of the minds" as to the terms contained within. At the time that the parties entered into the contract, there was no meeting of the minds that the arbitration provision would cover claims alleging tortious forms of theft. If the parties had contemplated, at the time that they entered into the arbitration agreement, that PaineWebber would possibly steal from Ginsburg, that would surely be against public policy. Matters more likely to have been contemplated by both parties would have involved questions of whether a particular transaction was authorized or whether there was any miscalculation in the sum of money contained in the account. Here, the claims filed by Cohen alleged that PaineWebber and Wilhelm had engaged in conduct beyond the scope of the brokerage agreement. Zenni, allegedly with the knowledge of PaineWebber and Wilhelm, had sent altered and false monthly account statements to Ginsburg. Accordingly, under the stated circumstances in this case, we hold that, as a matter of law, the claims of unlawful conversion and fraudulent concealment, were not subject to the arbitration provision.
As the claims alleged here, by the facts in the complaint, were not subject to the arbitration provision, the trial court did not abuse its discretion in denying the motion of PaineWebber and Wilhelm to stay the proceedings and to compel arbitration. The sole assignment of error is overruled, and we affirm the judgment of the court below.
Judgment affirmed.
Doan, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] Pursuant to R.C. 2711.02(C), an order that denies a stay of the trial of any action pending arbitration is a final order that may be appealed.
[2] See Harsco v. Crane Carrier Co. (1997), 122 Ohio App.3d 406,410, 701 N.E.2d 1040, 1043.
[3] See id.
[4] Council of Smaller Enterprises v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 665-666, 687 N.E.2d 1352, 1355, citing AT TTechnologies, Inc. v. Communications Workers of Am. (1986), 475 U.S. 643,648-650, 106 S.Ct. 1415, 1418-1419, quoting Steelworkers v. Am. Mfg. Co. (1960), 363 U.S. 564, 80 S.Ct. 1343; Steelworkers v. Warrior GulfNavigation Co. (1960), 363 U.S. 574, 80 S.Ct. 1347; and Steelworkers v.Enterprise Wheel Car Corp. (1960), 363 U.S. 593, 80 S.Ct. 1358.
[5] See Marchese v. Shearson Hayden Stone, Inc. (C.A.9, 1984),734 F.2d 414, 423.
[6] Duryee v. Rogers (Sept. 23, 1999), Franklin App. Nos. 98-AP-1255 and 98-AP-1256, unreported.